May it please the Court, Christina Sandifer for Appellants Nick Coons and Dr. Eric Novak, and if I may, I'd like to reserve five minutes for a rebuttal. The trial court's decision was most deficient where the constitutional violation was most egregious, and that is it dismissed the unprecedented consolidation of power in the Independent Payment Advisory Board without analysis. Now, the question in any separation of powers case is whether an agency is acting under authority of Congress or under authority of some other branch or whether in fact that agency is making its own laws. And the way that a court assesses this is by looking at the aggregate effect of the factors with relation to the scope of authority of that particular agency's power. Now, IPAB is charged with making laws, quote, related to the Medicare program, end quote. In order to keep prices down in Medicare. That is IPAB's intelligible principle. Related to the- Well, there are some other constraints there. They have to go to the chief actuary and they have to get certain kinds of calculations and figure out how the calculations relate to certain expectations they had before. So it's not utterly unanchored there. Well, Your Honor, with regard to the chief actuary, that is almost an automatic calculation. Once Medicare prices rise- It triggers an obligation depending on which way the actuary comes out. And there are years where they say you don't have to provide any recommendations depending on what the chief actuary says. The chief actuary is merely a calculator. Once the Medicare prices rise above a certain rate, then IPAB is in fact required to act. And at that point, it can act in any way that is, quote, related to the Medicare program, end quote. And then at that point, it can promulgate a series of laws, actions that automatically become law, without vote of Congress, without signature of the President, and also without review from the courts or from administrative bodies. So, again, IPAB is very broad authority to act once its powers are triggered. And such broad authority requires meaningful constraints beyond whatever is purported to be the intelligible principle, which, again, is related to the Medicare program. Now, once we look at the constraints and we examine the constraints that govern the Independent Payment Advisory Board, we see that the limits on its power are illusory. There really are no checks and balances. Now, in every case where a broader agency authority has been upheld, there have been some sort of checks or balances to constrain that broader agency authority. And IPAB in this sense is the first case that we have seen where all of these important checks and balances that were present in other cases are not present here. Again, IPAB enacts laws without an act of Congress. Whatever it decides automatically becomes law. And Congress can't alter or amend those acts before or even after they are enacted into law. But Congress can't change the act after IPAB acts? Congress has to – well, first of all, Congress has to follow a complicated procedure. And then it has to meet IPAB's savings target. Even after IPAB is acted, Congress is precluded from doing anything. That way – How can Congress be precluded from doing that? Well, that's what the law purports, Your Honor. And again, we're not arguing – the government argues that Congress can use its rulemaking power to supersede the rules that limit it to reaching IPAB's savings target and only IPAB's savings target. But effectively what you have is you have – you have sort of a – you have a two-house veto question going on here with a number of constraints which Congress has said are internal to us. In other words, we are taking this legislation as an amendment of our rules, which is an exercise of our constitutional authority under Article I. And if Congress wants to behave in that way, that's – Congress can change its rules because it has constitutional authority to make its rules. Certainly, Your Honor, to the extent that Congress is using its rulemaking power to make rules, we're certainly not arguing that Congress does not have that prerogative. Of course, Congress can't use its rulemaking authority to supersede the Constitution. And in this sense, again, looking at the totality of the factors, these factors just show Congress's attempt to separate itself as far as possible from control over IPAB. And that's what our argument is here. Again, IPAB acts with that signature input of the President. IPAB – the Affordable Care Act reduces the President effectively to a mere delivery man. He has to take IPAB's – Isn't that – is that the President's prerogative to object? Why is that your prerogative to object? The President – the President is a conduit here, and it does look as though the President might have an objection based on the recommendation clause. But if the President doesn't object, doesn't that mean that there's tacit approval of the recommendation that he's – that he's forwarding on to Congress from IPAB? In which case, what's the objection and what's your standing to raise an objection based on the President's – on a diminution in the President's authority under the recommendation clause? Certainly, Your Honor. And here Dr. Novak has alleged that 12.5 percent of his practice is Medicare patients, and that's how he is paid for that portion of his business. And he is subject to an unconstitutional regime that previously – The unconstitutional regime being an infringement of the President's recommendation authority? An unconstitutional regime that, again, in the – in the totality – I understand the other points. I'm focusing – I'm focusing on the point that you made about the recommendation clause. Sure. And when it comes to the recommendation clause, again, the fact that the President – although this is purportedly an executive agency, the fact that the President's ultimate check over an executive agency, and that is his ability pursuant to the recommendation's clause to object to whatever that agency is promulgating, it adds into the totality of factors. The President's principal check is the ability to remove, and the President's ability to direct because he can enforce it through the removal authority. Now, we haven't gotten to that problem. But in terms of an objection based on the recommendation clause, it's kind of hard to find here that there's a problem. If we're just isolating on that, I understand you want us to take a holistic approach. Sure. If the President forwards the recommendation, then hasn't the President given tacit approval? Perhaps, Your Honor. But the operative there, I believe, is the word if. According to the Affordable Care Act, the President must forward the recommendation – the recommendation, which, of course, you know, our – Right. But this President has shown a willingness to ignore certain kinds of things, and Presidents before have warned that they won't enforce certain acts that they regard that are encroachment upon their powers. Certainly. And again, Your Honor, you know, whether or not Congress decides to use its rulemaking authority to supersede IPUB, whether or not the President decides to ignore the plain language of the law in order to not forward on recommendations, is not really what we're arguing here. We are just simply arguing that these are all factors in the totality that lead to the lack of checks and balances and constraints on IPUB's authority to promulgate law. Counsel, I'm also concerned about the standing question. Judge Bybee asked you how your private clients have authority to raise issues that exacerbate significant injuries that have yet been alleged.  injury. He could be nine days, an hour. But it seems to me that any potential injury is very speculative at this point. There's no imminent injury, in fact, of any kind. It may be years in the future. It may never happen, depending on what the actuarial determinations are. Why isn't that a standing problem for you? Sure, Your Honor. First of all, again, the injury here, IPAT itself does exist. The law we know from the law ---- IPAT does exist? Yes.  And if he does not, and his powers are triggered, then the automatically triggered, then the Secretary of Health and Human Services inherits the power that the Board would otherwise have. So given that, we know that Dr. Novak, our plaintiff here, is subject to the unconstitutional regime of a Board that can act in any way. It's still speculative. There's been no action taken. There's no action imminent. There's no Board. There's no members. And again ---- I mean, update us. Has there been a single ---- is there a nomination pending for anybody yet? There is not. But again, Your Honor, it's important to note that, in fact, the Secretary can wield the full authority of the Board currently, right now. Could. Could. Speculatively. It's all speculative. That's my concern. You have ---- it's basically a citizen who looks at a law and says, I don't like this law. I find flaws in it, and therefore, I want the Court to rule on it. But I don't see where there is any sort of imminent injury that is specific. There is the possibility, if A and if B and if C and if D, off in the future, then I will be harmed. But it's not happening now. If I may try to clarify, our objection here is not whether or not the Board at some point is going to act to promote or not to promote Dr. Novak's interest. The injury here is that the Board itself, its very existence affects his interest. Because the Board exists under the Affordable Care Act, Medicare costs will not be able to ever rise above a certain target rate that's set by the law. And IPAB is able to act and, in fact, must act if the Medicare rates are ever to rise above that rate. Does the existence of the legislation chill something with the doctor? Well, in fact, Dr. Novak has alleged that he is ---- that this changes the entire market conditions, and we've seen this. An instructive case here, Your Honor, would be the case ---- And the legislation alone has changed the market conditions? And does ---- and do we give that the same kind of scrutiny we would give Chilling under the First Amendment? I don't know that we would give it the same scrutiny, Your Honor, but certainly for purposes of injury, the fact that it's changing market conditions and that Dr. Novak is now subject to this regime would give him standing. And a helpful case here might be the base closure case. In that case, the base closure commission had authority to close a variety of military bases. And in that case, the plaintiffs were union employees that worked at one of those military bases. Similar to Dr. Novak, he's subject to the authority of IPAB. Yes, but the effect there is more obvious. The effect of closing a base where a person works is that that person definitely loses their job. Here, you've got such a series of possibilities that they're, you know, into the future We don't know that there will be any financial effect ever, other than a guess. What we do know, Your Honor, though, is that Medicare costs cannot rise above a particular level now set by law. And similarly, we didn't know in the base closure case whether or not ---- Well, we don't know whether they'd rise or not anyway. That's true, Your Honor. But again, in the base closure case, we didn't know that the base closure commission had not actually acted to close a base, and then those ---- But we can understand the concrete injury that is anticipated. What is the concrete injury here that you are anticipating to apply? The concrete injury is the fact that Dr. Novak's interests are directly affected by the existence of an unconstitutional regime, that he was otherwise ---- that otherwise 12.5 percent of his business was subject to Congress that traditionally set the prices and had checks and balances on what it did. The IPAP hasn't been appointed. In the absence of the IPAP, it looks like the authority devolves on the secretary of HHS. That's correct. Okay. In the absence of IPAP to this point, has the secretary of HHS acted in IPAP's stead? She has not, because she has not been mandated by the law to act yet. So we haven't even gotten to the point where she's got to ---- What's the first deadline that's coming up? Well, Your Honor, that is whenever the trigger is hit. So in other words, whenever Medicare costs ---- And the trigger depends on the medical actuary. Well, it depends on a precise formula, not the medical actuary. Right. Okay. So that hasn't been triggered. So the secretary of HHS acting for IPAP hasn't done anything yet. Right. And so nothing's happened to the market in response to the creation of IPAP, and your question is, is it all right because what? Right. And that question does go more to rightness, Your Honor. And the question of rightness is simply whether a case is more fit to be heard now rather than any other time. There are no facts. What is the case? What has happened or what do you anticipate happening that you want to prevent? Well, again, it's ---- Other than just the existence of a law. Right. Well, it's the existence of the board that governs the scheme of Medicare costs, which are ---- which will automatically go into effect without vote of Congress, without the signature of the president, without any of the traditional checks and balances. And the rail reorganization case might be helpful here as well. There the Supreme Court allowed pre-enforcement review because, in part, the act prohibited judicial review. Same as here. IPAP's edicts will automatically go into law and are not reviewable by courts. So the Court said that waiting could cause irreparable injury. Again, Dr. Novak is subject to the jurisdiction of this board, and if the ---- A theoretical jurisdiction. I mean, a theoretical board. Well, we could exercise judicial review. I mean, you could challenge the fact that there was no judicial review here, perhaps, if there was a decision that might be subject to our judicial review. But you're asking us to declare unconstitutional a law because it lacks judicial review, a review that we might conduct if some decision had been made. I mean, this is just ---- we're so many steps removed from the kinds of things that are really actionable. Well, again, Your Honor, the law specifically states that anything that IPAP does is not subject to judicial review or anything that the Secretary does wielding IPAP's authority. Right. But if the Secretary acts, then at that point you've got a claim to come into court  And the government is going to come in and say there is no judicial review, but I'm here to tell you that that is unconstitutional. You cannot not review these actions. But you aren't to the point yet where there's any concrete effect on your claim. Well, the very fact that the board exists itself and creates an impediment, an unconstitutional impediment to Dr. Novak's interest is enough to confer standing. This is the airport case, as instructed there. There was a board that was created in order to increase air traffic at a national airport or keep it at the same level but not allow air traffic to decrease. And a citizens group there had standing in order to challenge the constitutionality of a board that was very similar to IPAP, although it even had additional constraints that IPAP lacks, just by virtue of the fact that the board was, quote, creating an impediment to reduction in noise, end quote. The board would not necessarily ever act. In fact, in a way, that was detrimental to the plaintiffs there. But the fact that the board existed and was creating an impediment, an unconstitutional impediment, was enough to confer standing. And we believe that's the same here in our case. I see that my time is waiting, and I would like to reserve a little time for rebuttal. But may I move on just quickly to address our privacy claim briefly? There, the trial court said that there was no violation simply because Mr. Koons could choose to pay the tax and avoid any privacy disclosures. And here the court failed to address the actual issue that was central to the case. Certainly in any unconstitutional condition case, a plaintiff can always avoid an informational disclosure by choosing not to exercise his right. But, again, the question here is whether the burden is minimal or whether it rises to an unconstitutional infringement on a right. And the Supreme Court has said in the Casey case and in the Whalen case that regulations that are aimed specifically at affecting decisions about medical care might or medical information might rise to the level of an undue burden. And here we have the NFIB court, the Supreme Court, telling us specifically that the tax here is a burden. The Supreme Court said that the tax, quote, aims to induce the purchase of health insurance, end quote, end quote, and seeks to shape decisions about whether to buy health insurance, end quote. So, again, the trial court did not sort of ended the inquiry early and did not apply the five-factor test that this court has applied in Tucson Women's Clinic, taking into account the types of information demanded, whether or not there are adequate safeguards, no discovery was conducted, and the court didn't address whether or not the fact that the Supreme Court has said this tax was a burden would actually, how that would weigh in in Mr. Kuhn's claim. So, again, we would ask for a remand on that to be, because we're entitled to discovery, to be able to flush out that type of information and to get the trial court to actually conduct the five-factor balancing test. If there are no other questions from this Court, I'd like to reserve the remainder of my time for rebuttal. You may reserve it. Thank you. Good morning, mate. Please, the Court. Jeff Sandberg for the Federal Defendants. I think Your Honor's colloquy with my opposing colleague has highlighted the serious deficiencies with Dr. Novak's standing on the Independent Payment Advisory Board claim. I just have a few specific comments about things that my opposing colleague said.  that plaintiff has relied upon here actually support the plaintiff. If you read the airport authority case, for example, the board that was being challenged was a panel of nine congressmen that were going to get to vote on whether or not the airport, Reagan National Airport, was going to be transferred from the federal government to the local airport authority. And the local airport authority put together a master plan that made very clear that there was maybe going to be more noise or pollution, and then the board actually voted to approve the plan. And it was at that point, where a plan was about to go into effect, that the plaintiffs there came into court and said, you've got to stop this because it's going to hurt my interests. And as I think Your Honor's questioning point out, we are many, many, many steps away from that happening here yet. Last year was the last official determination that was made. It was in May of last year, another one's forthcoming this summer. Last year, the thought was that the first year that the Medicare growth rate would exceed the target rate would be in the year 2018, which would require a proposal to be kicked off in 2016. There'll be another projection made later this summer that may or may not reveal that that timetable has changed. I would also point out that even if the secretary or the board's powers are triggered to make a proposal, we have no reason to suspect that Dr. Novak is going to see any change in his rates. There are many ways that the board could propose to make the Medicare program more efficient. It can cut administrative overhead. It could reduce rates for other providers who are providing less efficient care. We have no reason to know that Dr. Novak, while he's still practicing medicine, is ever going to see a board propose anything that will affect his economic bottom line. I'd also like to speak to the suggestion that maybe there's been some alteration in current market conditions. Dr. Novak's declaration in support of his claim to standing, which is at docket entry number 50 in the district court record, makes very clear that what he's complaining about is he thinks that someday the board will cut his Medicare rates and does not, you know, state any facts concerning any current market conditions. And it's hard for me to imagine what current market conditions could be affecting him because what he's complaining about is Medicare rates, and Medicare rates haven't been cut yet. It's unclear what would be happening in the marketplace that would affect the rates that he's getting paid under Medicare. And in any event, he hasn't even begun to, you know, allege or prove facts that would support that claim to standing. So for all of those reasons, any challenge to the board is jumping the gun here, and this court can uphold a dismissal on the grounds that the plaintiff lacks standing. On the informational privacy claim, there are a number of ways that the dismissal could be sustained. I would point out that here, too, plaintiff is, in this case, Mr. Coons, is jumping the gun. He hasn't even begun to plead any interference with his right to informational privacy. He hasn't identified a specific piece of information that anyone has ever asked him to disclose. And plaintiff seems to be litigating this case as if as soon as a law is enacted that may seem to require filling out a form at some point, you're allowed to challenge it on its face as a violation of the right to informational privacy. Well, you know, in looking at this court's past decisions on the right to informational privacy, none of them resemble this. It's all clear what specific piece of information we're talking about. Even if you assume that what plaintiff is concerned about is sensitive medical information, here, too, there's no basis for thinking that plaintiff is going to have to provide sensitive medical information to insurance companies if he were to seek insurance. And that is because under the Affordable Care Act, one of the reforms that was enacted was that an insurance company cannot deny coverage to any person based on preexisting medical conditions and, indeed, cannot even vary their premium rates based on the health status of that individual. The law of the law reduces the risk of having to provide sensitive information. What I'm saying is that an insurance company could not ask for sensitive medical information, and if the plaintiff refused to provide it, the insurance company would be acting unlawfully if it said, well, you won't give me the information, fine, I'm not going to cover you. An insurance company is legally required to provide coverage. And if an insurance company were, for some reason, to ask questions about health status, there's a tricky analysis that would have to be done about whether that would be a lawful marketing practice. But in any event, you know, to my knowledge, and plaintiff hasn't alleged anything otherwise, there's simply, you know, an insurance company, the government is not compelling insurance companies to require individuals to provide sensitive medical information in order to obtain insurance coverage. And at this point, I'd be happy to answer any further questions from the Court. But the government respectfully requests that the judgment be affirmed. Thank you, counsel. You have some rebuttal time remaining. Thank you, Your Honor. I see that I have little time left, but I'd like to make a couple points here. First, with regard to the airport case, I'd like to clarify something there. Their standing for those plaintiffs was not contingent on a pending plan. The Board had a very broad scope, like IPAB. It could force a vote, besides just acting on a particular plan, it could force a vote on, quote, any action related to airports, end quote, which is, again, very similar to IPAB's mandates. But the difference is that it didn't – it had broad powers, which was one of the issues, but an actual plan was in existence that was going to be implemented, and it was the immediacy of that that allowed standing, not the breadth or narrowness of the legislation. And not to belabor the point too much, Your Honor, given the limited time, but I think that the plan – there were several layers in existence in that case, and I think that the plan there was akin to the legislation in the Affordable Care Act itself, which the Court itself recognized was at least noise-neutral. So, in other words, there is a plan out there that is at least noise-neutral, that is governing the framework, much like the Affordable Care Act sets a rate beyond which Medicare can't go, and then the Boards are allowed to act within that scope. Again, Novak here has alleged that the Affordable Care Act alters the procedure by which he's paid for his work. That's in the record at page 51 and at 80. And so it's not just any speculative action the Board may take. It's that the Board is altering the procedure by which he's paid. I'd like to – Kagan in what respect, the procedure? Different form or – it doesn't seem to me that procedure is his problem. It's substance that's his problem. It's both, Your Honor. The procedure itself is important. To Dr. Novak, the fact, again, that the Board is able to act in any way related to the Medicare program. No. Specifically, what about his procedure is different that is harmful to him? Previously, his reimbursement rates were set by Congress, which had – That's a rate. I'm asking the process by which he says, I have served this patient and I want X dollars for that. How has that procedure changed now? Sure. The process that he's speaking to, again, is the process by which that rate is determined. Okay. So it's not his procedure of getting money. It's the procedure by which somebody else figures out how much he's to get, which is – so it isn't the procedure. Your Honor. Finally, I see I only have a few seconds left, but we are not saying here that Nick Kuhn's – it's saying that Nick Kuhn's has to wait for his insurance company misconstrues the issue before the court. He doesn't want to purchase insurance, and so there will never be a request for particular information. Again, this is a motion to dismiss. No request has been made. On Nick Kuhn's case – Right, but he doesn't have to purchase insurance, right? He does not have to purchase insurance, but if he does not, he'll have to pay the tax. There's nothing in the law that says – that prohibits an insurance company from requesting sensitive information. In fact, the law says – But then the alternative is he pays the tax. He pays the tax. And the question is whether or not that tax rises to an unconstitutional burden on his informational privacy, which is something the court below did not address by weighing a totality of the factors. And given that this is a motion to dismiss, we would ask that this court would remand so that we can conduct discovery on these issues and so that the appropriate test could be put into effect. Thank you very much, counsel. Thank you, Your Honor. The case just argued is submitted and has been my mantra all day. The arguments have been very helpful to the court, and we appreciate them.
judges: SCHROEDER, GRABER, BYBEE